UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CR-20393-CMA

UNITED STATES OF AMERICA

v.

DENNIS DOPICO,

        Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida and U.S. Department of Justice, Antitrust Division (the "Offices") and Dennis Dopico (the "defendant") hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."):

## RIGHTS OF DEFENDANT

1.     The defendant understands his rights:

        (a)    to be represented by an attorney;

        (b)    to be charged by indictment;

        (c)    to plead not guilty to any criminal charge brought against him;

        (d)    to have a trial by jury, at which he would be presumed not guilty of the charge and the United States would have to prove every essential element of the charged offense beyond a reasonable doubt for him to be found guilty;

        (e)    to confront and cross-examine witnesses against him and to subpoena witnesses in his defense at trial;

        (f)    not to be compelled to incriminate himself;

        (g)    to appeal his conviction, if he is found guilty; and

(h) to appeal the imposition of sentence against him.

## AGREEMENT TO PLEAD GUILTY AND WAIVE CERTAIN RIGHTS

2. The defendant knowingly and voluntarily waives:

(a) the rights set out in Subparagraphs 1(b)-(f) above;

(b) the right to file any appeal or collateral attack, including but not limited to an application or motion under 28 U.S.C. § 2241 or § 2255, that challenges his conviction, including but not limited to any appeal or collateral attack raising an argument that (1) the statute to which he is pleading guilty is unconstitutional or (2) the admitted conduct does not fall within the scope of such statute; and

(c) the right to file any appeal or collateral attack, including but not limited to an appeal under 18 U.S.C. § 3742 or an application or motion under 28 U.S.C. § 2241 or § 2255, that challenges the sentence imposed by the Court if that sentence is consistent with or below the maximum sentence set forth in Paragraph 8 of this Plea Agreement, regardless of how the sentence is determined by the Court. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b).

Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

3. Pursuant to Fed. R. Crim. P. 7(b), the defendant will waive indictment and plead guilty to a one-count Information filed in the United States District Court for the Southern District of Florida. The Information charges the defendant with participating in a conspiracy to suppress and eliminate competition by fixing the prices paid to fishermen for stone crab claws and spiny

lobsters harvested in Florida from at least as early as July 2023 through in or around April 2025, in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

4. Consistent with Fed. R. Crim. P. 11(b)(1)(O), the defendant recognizes that if he is not a citizen of the United States pleading guilty may have consequences with respect to his immigration status, including removal from the United States, denial of citizenship, and denial of admission to the United States in the future. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

5. The defendant will plead guilty to the criminal charge described in Paragraph 3 above pursuant to the terms of this Plea Agreement and will make a factual admission of guilt to the Court in accordance with Fed. R. Crim. P. 11, as set forth in Paragraph 6 below.

## FACTUAL BASIS FOR OFFENSE CHARGED

6. Had this case gone to trial, the defendant agrees that the United States would have presented evidence to prove the following facts beyond a reasonable doubt:

(a) From at least as early as July 2023 through in or around April 2025, the defendant was a Vice President of Company 1, an entity organized and existing under the laws of Florida and with its principal place of business in Miami, Florida. During this period, Company 1 operated a seafood processing center whereby it sold stone crab claws and spiny lobsters to restaurants, wholesalers, and consumers, including shipping such

3

products throughout the United States and overseas. During this period, Company 1's purchases of stone crab claws and spiny lobsters affecting fishermen in Florida totaled no more than $8,000,000.

(b) From at least in or around July 2023 through at least in or around April 2025, the defendant knowingly and voluntarily joined and participated in a conspiracy with other persons and entities engaged in the purchase of stone crab claws and spiny lobsters in Florida, the primary purpose of which was to suppress and eliminate competition and fix the prices paid to fishermen for stone crab claw and spiny lobster harvests in Florida. In furtherance of the conspiracy, the defendant engaged directly and indirectly in discussions, communications, and meetings with representatives of other major purchasers of stone crab claws and spiny lobsters in Florida, including Individual 2 (the president and owner at Company 2), Individual 3 (the manager for purchasing and sales for Company 3), Individual 4 (formerly the manager of purchasing and sales for Company 4), and Individual 5 (the manager of purchasing and sales for Company 5), to suppress and eliminate competition and fix the prices paid to fishermen for stone crab claws and spiny lobsters harvested in Florida.

(c) For example, on or about September 28, 2023, the defendant texted Individual 2 the prices he was paying to fishermen for spiny lobster. Individual 2 responded "ok thanks[,]" and the defendant replied "[d]on't show text to anyone[.] Confidential[.]" Individual 2 responded, "I give you my word. We're working together now[,] not against each other[.]" On or about October 13, 2023, Individual 2 texted the defendant Company 2's stone crab claw prices: "Everglades city 14.50[,] 22.50[,] 34.00[, and] 37.00[.]" The defendant responded, "[l]et me know what you do. I am matching your prices. It's the one

4

we like the most[.]" After Individual 2 shared Company 2's prices, the defendant matched those prices. The defendant also engaged directly and indirectly with Individuals 3, 4, and 5, regarding the prices at which Companies 3, 4, and 5, respectively, would pay fishermen for stone crab claws and spiny lobsters, which the defendant often matched.

(d) During the same period, stone crab claws and spiny lobsters purchased by one or more of the co-conspirator companies, equipment and supplies necessary to the distribution of stone crab claws and spiny lobsters, as well as payments for stone crab claws and spiny lobsters traveled in interstate commerce. The business activities of the co-conspirators in connection with the purchase of stone crab claws and spiny lobsters that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.

(e) Acts in furtherance of this conspiracy were carried out within the Southern District of Florida. The conspiratorial discussions, communications, and meetings described above took place in the United States, and at least one of these meetings, which was attended by the defendant, occurred in this District.

## ELEMENTS OF THE OFFENSE

7. The elements of the charged offense are that:

(a) the conspiracy described in the Information existed at or about the time alleged;

(b) the defendant knowingly became a member of the conspiracy; and

(c) the conspiracy described in the Information either substantially affected interstate commerce in goods or services or occurred within the flow of interstate commerce in goods and services.

5

## POSSIBLE MAXIMUM SENTENCE

8. The defendant understands that the statutory maximum penalties which may be imposed against him upon conviction for a violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, is:

    (a) a term of imprisonment for ten (10) years (15 U.S.C. § 1);

    (b) a fine in an amount equal to the greatest of (1) $1 million, (2) twice the gross pecuniary gain the co-conspirators derived from the crime, or (3) twice the gross pecuniary loss caused to the victims of the crime by the conspirators (15 U.S.C. § 1; 18 U.S.C. § 3571(b) and (d)); and

    (c) a term of supervised release of three (3) years following any term of imprisonment. If the defendant violates any condition of supervised release, the defendant could be required to serve up to two (2) years in prison (18 U.S.C. § 3559(a)(3); 18 U.S.C. § 3583(b)(2) and (e)(3)); and United States Sentencing Guidelines ("U.S.S.G.," "Sentencing Guidelines," or "Guidelines") § 5D1.2(a)(2)).

9. In addition, the defendant understands that:

    (a) pursuant to U.S.S.G. § 5E1.1 or 18 U.S.C. § 3663(a)(3) or § 3583(d), the Court may order him to pay restitution to the victims of the offense; and

    (b) pursuant to 18 U.S.C. § 3013(a)(2)(A), the Court is required to order the defendant to pay a $100.00 special assessment upon conviction for the charged crime.

## SENTENCING GUIDELINES

10. The defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider, in determining and imposing sentence, the Guidelines Manual in effect on the date of sentencing unless that Manual provides for greater punishment than

the Manual in effect on the last date that the offense of conviction was committed, in which case the Court must consider the Guidelines Manual in effect on the last date that the offense of conviction was committed. The parties agree there is no *ex post facto* issue under the November 2024 Guidelines Manual. The Court must also consider the other factors set forth in 18 U.S.C. § 3553(a) in determining and imposing sentence. The defendant understands that the Court will make Guidelines determinations by applying a standard of preponderance of the evidence. The defendant understands that although the Court is not ultimately bound to impose a sentence within the applicable Guidelines range, its sentence must be reasonable based upon consideration of all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). Pursuant to U.S.S.G. §1B1.8, the Offices agree that self-incriminating information that the defendant provides to the United States pursuant to this Plea Agreement will not be used to increase the volume of affected commerce attributable to the defendant or in determining the defendant's applicable Guidelines range, except to the extent provided in U.S.S.G. §1B1.8(b).

## SENTENCING AGREEMENT

11. Pursuant to Fed. R. Crim. P. 11(c)(1)(B) and subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 15 of this Plea Agreement, the Offices and the defendant agree that the following Sentencing Guidelines apply ("recommended Guidelines"):

(a) Pursuant to U.S.S.G. § 2R1.1(a), the base offense level for a violation of 15 U.S.C. § 1 is **12**.

(b) Pursuant to U.S.S.G. § 2R1.1(b)(2), **2** levels are added because the volume of commerce attributable to the defendant was greater than $1,000,000 and less than $10,000,000.

7

(c) This calculation results in an adjusted offense level of **fourteen (14)**.

(d) The Offices agree that it will make a motion, pursuant to U.S.S.G. § 3E1.1, for a **2-level** downward adjustment for acceptance of responsibility, and an additional **1-level** adjustment if the Court determines the offense level prior to the acceptance of responsibility adjustment to be 16 or higher. U.S.S.G. §3E1.1(a)-(b). However, should the Offices obtain or receive evidence or information prior to sentencing that, in its sole discretion, it determines to be credible and materially in conflict with this provision, then the Offices will no longer be bound by this provision.

(e) The Offices will not oppose a **2-level** downward adjustment if the Court determines that the defendant meets the criteria listed in U.S.S.G. § 4C1.1. The defendant waives the right to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on U.S.S.G. § 4C1.1.

(f) This calculation results in a final anticipated adjusted offense level of **ten (10)**.

12. There is no agreement as to the defendant's criminal history and the defendant understands that the defendant's criminal history could alter the defendant's offense level. Specifically, the defendant understands that the defendant's criminal history could alter the final offense level if the defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised by the United States or the defendant in calculating the advisory guidelines range.

8

13. At the time of sentencing, the Offices and the defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). In addition, the defendant understands that the Court will order him to pay a $100 special assessment pursuant to 18 U.S.C. § 3013(a)(2)(A) in addition to any fine imposed. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to the United States and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

14. The Offices and the defendant understand that the Court retains complete discretion to accept or reject either party's sentencing recommendation. The defendant understands that, as provided in Fed. R. Crim. P. 11(c)(3)(B), if the Court does not impose either party's sentencing recommendation, he nevertheless has no right to withdraw his plea of guilty.

## DEFENDANT'S COOPERATION

15. The defendant will cooperate fully and truthfully with the Offices in the prosecution of this case, the current federal investigation of violations of federal antitrust and related criminal laws involving the purchase of stone crab claws and spiny lobsters in Florida, any federal investigation resulting therefrom, and any litigation or other proceedings arising or resulting from any such investigation to which the United States is a party (collectively, "Federal Proceeding"). Federal Proceeding includes, but is not limited to, an investigation, prosecution, litigation, or other proceeding regarding obstruction of, the making of a false statement or declaration in, the commission of perjury or subornation of perjury in, the commission of contempt in, or conspiracy to commit such offenses in, a Federal Proceeding. The full, truthful, and continuing cooperation

of the defendant will include, but not be limited to:

(a) producing all documents, including claimed personal documents, and other materials, wherever located, not protected under the attorney-client privilege or the work-product doctrine, in the possession, custody, or control of the defendant, that are requested by attorneys and agents of the United States in connection with any Federal Proceeding;

(b) making himself available for interviews, not at the expense of the United States, upon the request of attorneys and agents of the United States in connection with any Federal Proceeding;

(c) responding fully and truthfully to all inquiries of the United States in connection with any Federal Proceeding, without falsely implicating any person or intentionally withholding any information, subject to the penalties of making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), or conspiracy to commit such offenses;

(d) otherwise voluntarily providing the United States with any material or information not requested in (a)–(c) of this paragraph and not protected under the attorney-client privilege or work-product doctrine that he may have that is related to any Federal Proceeding;

(e) when called upon to do so by the United States in connection with any Federal Proceeding, participating in affirmative investigative techniques, including but not limited to making telephone calls, recording conversations, and introducing law enforcement officials to other individuals, with all such activity being conducted only at the express direction and under the supervision of attorneys and agents of the United States;

(f) when called upon to do so by the United States in connection with any

10

Federal Proceeding, testifying in grand jury, trial, and other judicial proceedings fully, truthfully, and under oath, subject to the penalties of perjury (18 U.S.C. § 1621), making a false statement or declaration in grand jury or court proceedings (18 U.S.C. § 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), and contempt (18 U.S.C. §§ 401 - 402); and

(g) not committing, participating in, or attempting to commit or participate in any additional crimes.

## GOVERNMENT'S AGREEMENT

16. Subject to the full, truthful, and continuing cooperation of the defendant, as defined in Paragraph 15 of this Plea Agreement, and upon the Court's acceptance of the guilty plea called for by this Plea Agreement and the imposition of a sentence, the Offices agree that it will not bring further criminal charges against the defendant for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the purchase of stone crab claws and spiny lobsters in Florida (the "Relevant Offense"). The non-prosecution terms of this paragraph do not apply to (a) any acts of perjury or subornation of perjury (18 U.S.C. §§ 1621-22), making a false statement or declaration (18 U.S.C. §§ 1001, 1623), obstruction of justice (18 U.S.C. §§ 1503 *et seq.*), contempt (18 U.S.C. §§ 401-402), or conspiracy to commit such offenses; (b) civil matters of any kind; (c) any violation of the federal tax or securities laws or conspiracy to commit such offenses; or (d) any crime of violence.

17. The United States reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of the Offices, the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal

11

matters as to warrant the Court's imposition of a sentence that is below the otherwise applicable guideline range and/or any applicable minimum mandatory sentence, the United States may make a motion prior to sentencing pursuant to U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e), or subsequent to sentencing pursuant to Fed. R. Crim. P. 35, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires the Offices to file any such motions, and that the Offices' assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of the Offices' filing or non-filing of a motion to reduce sentence.

18. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the Offices. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

## REPRESENTATION BY COUNSEL

19. The defendant has reviewed all legal and factual aspects of this case with his attorney and is fully satisfied with his attorney's legal representation. The defendant has thoroughly reviewed this Plea Agreement with his attorney and has received satisfactory explanations from his attorney concerning each paragraph of this Plea Agreement and alternatives available to the defendant other than entering into this Plea Agreement. After conferring with his attorney and considering all available alternatives, the defendant has made a knowing and voluntary decision to enter into this Plea Agreement and plead guilty to the violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, charged in the Information.

## VOLUNTARY PLEA

20. The defendant's decision to enter into this Plea Agreement and to tender a plea of guilty is freely and voluntarily made and is not the result of force, threats, assurances, promises, or representations other than the representations contained in this Plea Agreement. The United States has made no promises or representations to the defendant as to whether the Court will accept or reject the recommendations contained within this Plea Agreement.

## VIOLATION OF PLEA AGREEMENT

21. The defendant agrees that, should the United States determine in good faith, during the period that any Federal Proceeding is pending, that the defendant has failed to provide full, truthful, and continuing cooperation, as defined in Paragraph 15 of this Plea Agreement, or has otherwise violated any provision of this Plea Agreement, the United States will notify counsel for the defendant in writing by personal or overnight delivery, email, or facsimile transmission and may also notify counsel by telephone of its intention to void any of its obligations under this Plea Agreement (except its obligations under this paragraph), and the defendant will be subject to prosecution for any federal crime of which the United States has knowledge including, but not limited to, the substantive offenses relating to the investigation resulting in this Plea Agreement. The defendant agrees that, in the event that the United States is released from its obligations under this Plea Agreement and brings criminal charges against the defendant for any Relevant Offense, the statute of limitations period for such offense will be tolled for the period between the date of signature of this Plea Agreement and six (6) months after the date the United States gave notice of its intent to void its obligations under this Plea Agreement.

22. The defendant understands and agrees that in any further prosecution of him resulting from the release of the Offices from its obligations under this Plea Agreement because

13

of the defendant's violation of this Plea Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him. In addition, the defendant unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Rule 410 of the Federal Rules of Evidence.

## ENTIRETY OF AGREEMENT

23. This Plea Agreement constitutes the entire agreement between the United States and the defendant concerning the disposition of the criminal charge in this case. This Plea Agreement cannot be modified except in writing, signed by the Offices and the defendant.

24. The undersigned attorneys for the United States have been authorized to enter this Plea Agreement on behalf of the United States.

25. A facsimile or PDF signature will be deemed an original signature for the purpose of executing this Plea Agreement. Multiple signature pages are authorized for the purpose of executing this Plea Agreement.

DATED: 9/16/25

By: _____
DENNIS DOPICO
Defendant

By: _____
ROBERT N. PELIER, ESQ.
Counsel for Dennis Dopico

GAIL SLATER
ASSISTANT ATTORNEY GENERAL
ANTITRUST DIVISION

DATED: 9/16/2025

By: _____
David T. Bernhardt

14

Zachary Trotter<br>
Haley Pennington<br>
Trial Attorney, Antitrust Division<br>
450 Fifth St NW,<br>
Washington, DC 20001<br>
Telephone: (202) 733-7068<br>
David.bernhardt@usdoj.gov<br>
<br>
<br>
JASON A. REDING QUIÑONES<br>
UNITED STATES ATTORNEY<br>
SOUTHERN DISTRICT OF FLORIDA

DATED: 9/16/2025

By: /s/ Nalina Sombuntham
Nalina Sombuntham
Assistant United States Attorney

15